IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

PETER MALIVAO              )     CR 13-00885 LEK
                           )     CV 17-00358 LEK
        Petitioner, Pro Se )
                           )
    vs.                    )
                           )
UNITED STATES OF AMERICA,  )
                           )
        Respondent.        )
_____)

**ORDER DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE,
SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL
CUSTODY AND DENYING A CERTIFICATE OF APPEALABILITY**

Before the Court is Defendant/Petitioner

Peter Malivao's ("Malivao") Motion under 28 U.S.C. § 2255 to

Vacate, Set Aside, or Correct Sentence by a Person in Federal

Custody ("§ 2255 Motion"). [Dkt. no. 152.] On August 14, 2017,

Malivao filed a supplemental declaration in support of the § 2255

Motion. [Dkt. no. 158.] Plaintiff/Respondent the United States

of America ("the Government") filed its response to the § 2255

Motion on March 9, 2018, and Malivao filed his reply on April 9,

2018. [Dkt. nos. 172, 174.] Malivao's § 2255 Motion is hereby

denied, and a certificate of appealability is also denied, for

the reasons set forth below.

**BACKGROUND**

On September 26, 2013, Malivao and Defendants

Vitorio Vili ("Vili"), James McKinnon ("McKinnon"), and

Andrew Lilo ("Lilo") were indicted for: conspiracy to distribute,

and to possess with intent to distribute, five hundred grams or more of methamphetamine, its salts, isomers, and salts or its isomers – specifically 4,730 grams – in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 846 ("Count 1"); and attempt to possess with intent to distribute five hundred grams or more of methamphetamine, its salts, isomers, and salts or its isomers – specifically 4,730 grams – in violation of § 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2 ("Count 2"). [Dkt. no. 22.] At his arraignment on October 3, 2013, Malivao pled not guilty. [Minutes, filed 10/3/13 (dkt. no. 32).]

On September 5, 2014, Malivao changed his plea as to Count 1 to guilty, pursuant to a plea agreement. [Minutes, filed 9/5/14 (dkt. no. 99); Mem. of Plea Agreement ("Plea Agreement"), filed 9/5/14 (dkt. no. 100).] Malivao admitted to an outline of the facts, which supported the offense alleged in Count 1. On September 14, 2013, federal agents – acting pursuant a valid search warrant – seized a package that was found to contain approximately nine pounds of methamphetamine. On September 16, 2013, agents replaced most of the contents with pseudo-methamphetamine, placed a tracking device and beeper inside the package, and allowed it to be picked up at the intended mailbox service. A female picked up the package and took it to Malivao, Vili, and McKinnon, who were sitting in a vehicle outside. Malivao knew there was methamphetamine in the package and that

2

McKinnon and Vili planned to break the methamphetamine into smaller quantities to sell to others. He knowingly and willingly joined and participated in the conspiracy, even though he knew it was illegal to possess and distribute methamphetamine, and intended to make a profit through his participation. [Plea Agreement at ¶¶ 8.a-c.]

Malivao purchased a safe to store the methamphetamine and the proceeds from the sale. Malivao, McKinnon, and Vili then drove to Lilo's residence. Malivao opened the package in Lilo's residence, but Malivao left because he saw wiring inside the package. McKinnon and Vili were arrested in the area, and federal agents recovered the package from Lilo's residence.[1] [Id. at ¶ 8.d.] Malivao agreed that he was responsible for the

---

[1] McKinnon ultimately pled guilty to Count 1 in the instant case, and Count 2 was dismissed. He was sentenced to ninety months of imprisonment, five years of supervised release, and a $100.00 special assessment. [Judgment in a Criminal Case, filed 4/6/15 (dkt. no. 117).]

Vili and Lilo were each charged in separate felony informations, and each pled guilty to conspiracy to distribute and possess with intent to distribute methamphetamine. Vili was sentenced to thirty six months of imprisonment, three years of supervised release, and a $100.00 special assessment; and Lilo was sentenced to thirty months of imprisonment, three years of supervised release, and a $100.00 special assessment. [United States v. Vili, CR 13-01064 LEK, Judgment in a Criminal Case, filed 10/28/14 (dkt. no. 34); United States v. Lilo, CR 13-01069 LEK, Judgment in a Criminal Case, filed 10/31/14 (dkt. no. 23).] The Government dismissed the charges against Vili and Lilo in the instant case. [Order for Dismissal, filed 10/29/14 (dkt. no. 103) (Vili); Order for Dismissal, filed 10/31/14 (dkt. no. 104) (Lilo).]

approximately 4,730 grams of methamphetamine that was inside the package.  [Id. at ¶ 8.e.]  Malivao waived his right to appeal or collaterally attack his conviction and sentence, except: to assert a claim of ineffective assistance of counsel; or to challenge any upward departure from the proposed range under the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."). [Id. at ¶ 12.]

The Presentence Investigation Report ("PSR") prepared by the United States Probation Office found that, based on the amount of methamphetamine Malivao was responsible for, his base offense level was thirty six.  His offense level was increased by two because of his role in the offense and decreased by three for acceptance of responsibility, for a total offense level of thirty five.  [PSR at ¶¶ 28-37.]  Malivao's criminal history category was I.  [Id. at ¶ 44.]  There was a minimum term of imprisonment of 120 months, and the Guidelines sentencing range was 168 to 210.  [Id. at ¶¶ 66-67.]  On June 29, 2015, Malivao filed a Motion for Downward Departure and/or Variance from the Sentencing Guidelines ("6/29/15 Motion"), which argued that, based upon several mitigating factors: 1) he should receive a term of imprisonment that was below the mandatory minimum sentence; or 2) even if this Court followed the mandatory minimum sentence, it should impose a term of imprisonment that was substantially less than the Guidelines sentencing range.  [Dkt. no. 123.]

At the August 29, 2015 sentencing, this Court accepted
the Plea Agreement and adopted the factual findings in the PSR.
[Minutes, filed 8/26/15 (dkt. no. 127), at 1.]  The 6/29/15
Motion was granted in part and denied in part, and Defendant was
sentenced to 156 months of imprisonment, 5 years of supervised
release, and a $100.00 special assessment.  [Id. at 1-2.]  This
Court also granted the Government's oral motion to dismiss
Count 2.  [Id. at 3.]  Malivao's Judgment in a Criminal Case was
filed on August 28, 2015.  [Dkt. no. 132.]

Malivao filed a Notice of Appeal on September 8, 2015.
[Dkt. no. 134.]  The Ninth Circuit dismissed his appeal on
January 23, 2017.  [Memorandum, filed 1/23/17 (dkt. no. 148).[2]]
The Ninth Circuit rejected Malivao's argument that this Court
"failed to resolve his factual objections to the presentence
report, in violation of Federal Rule of Criminal Procedure 32"
because of the appellate waiver in the Plea Agreement, which the
Ninth Circuit held was supported by adequate consideration.  [Id.
at 2.]  Further, the Ninth Circuit declined to address Malivao's
ineffective assistance of counsel claim,[3] on the ground that the

_____

[2] The Ninth Circuit's memorandum disposition is also
available at 674 F. App'x 735.

[3] At all relevant times, Randall Harakal, Esq., represented
Malivao in this district court.  See Minutes, filed 9/20/13 (dkt.
no. 14) (noting Mr. Harakal's appearance as retained counsel at
Malivao's initial appearance); Ninth Circuit Order, filed
10/13/15 (dkt. no. 139) (relieving retained counsel, Mr. Harakal,
(continued...)

record was "not sufficiently developed to evaluate" the claim. [Id.] The Ninth Circuit's Mandate was issued on February 14, 2017. [Dkt. no. 149.]

Malivao timely filed the instant § 2255 Motion, which alleges: this Court violated Rule 32 because there were disputed facts regarding Malivao's role in the offense and this Court did not make express findings resolving the disputes before imposing the enhancement ("Ground One"); Malivao's counsel rendered constitutionally ineffective assistance by failing to object to the imposition of the aggravated role enhancement ("Ground Two"); and Malivao's counsel rendered constitutionally ineffective assistance by failing to argue that Malivao qualified for a safety valve adjustment ("Ground Three").

## **STANDARD**

Section 2255(a) states:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

---

[3] (...continued)
as counsel of record and noting that new counsel would be appointed).

This district court has described the standards applicable to

§ 2255 motions as follows:

> A court may dismiss a § 2255 motion if "it
> plainly appears from the motion, any attached
> exhibits, and the record of prior proceedings that
> the moving party is not entitled to relief."
> R. 4(b), Rules Governing Section 2255 Proceedings.
> A court need not hold an evidentiary hearing if
> the allegations are "palpably incredible [or]
> patently frivolous," Blackledge v. Allison, 431
> U.S. 63, 76 (1977) (internal quotation marks and
> citation omitted), or if the issues can be
> conclusively decided on the basis of the evidence
> in the record.  See United States v. Mejia-Mesa,
> 153 F.3d 925, 929 (9th Cir. 1998) (noting that a
> "district court has discretion to deny an
> evidentiary hearing on a § 2255 claim where the
> files and records conclusively show that the
> movant is not entitled to relief").  Conclusory
> statements in a § 2255 motion are insufficient to
> require a hearing.  United States v. Johnson, 988
> F.2d 941, 945 (9th Cir. 1993).  A petitioner must
> "allege specific facts which, if true, would
> entitle him to relief."  United States v.
> Rodrigues, 347 F.3d 818, 824 (9th Cir. 2003)
> (internal quotation marks and citation omitted).

United States v. Sherman, Cr. No. 16-00169 JMS, 2017 WL 4560150,

at *1 (D. Hawai`i Oct. 12, 2017) (alteration in Sherman).

The issues raised in Malivao's § 2255 Motion are legal

issues that "can be conclusively decided on the basis of the

evidence in the record," including the record of the underlying

proceedings.  See Mejia-Mesa, 153 F.3d at 929.  This Court need

not resolve factual disputes in order to rule on the legal issues

presented in the § 2255 Motion.  Compare Mem. in Supp. of § 2255

Motion at I 4 ("[C]ounsel should have advised Malivao to provide

trughful [sic] information regarding his offense to the

government before sentencing.  Counsel's performance was
deficient because he prevented Malivao from qualifying for the
fifth safety valve facotr [sic]." (citations omitted)),[4] <u>with</u>
Response, Decl. of Randall N. Harakal at ¶ 3 (describing
discussions between Mr. Harakal and Malivao).  An evidentiary
hearing is therefore unnecessary in this case.

### DISCUSSION

**I.  Ground One - Alleged Rule 32 Violation**

At the outset, the Government argues that this Court
cannot consider Malivao's arguments in Ground One because Malivao
waived his right to bring such challenges on appeal and on
collateral review.  In the Plea Agreement, Malivao agreed:

> 12.  The Defendant is aware that he has the
> right to appeal his conviction and the sentence
> imposed.  Defendant knowingly waives the right to
> appeal, except as indicated in subparagraph "b"
> below, his conviction and any sentence within the
> maximum provided in the statutes of conviction or
> the manner in which that sentence was determined,
> on any ground whatever, in exchange for the
> concessions made by the prosecution in this plea
> agreement.
>
> a.  The Defendant also waives his right
> to challenge his conviction or sentence or
> the manner in which it was determined in any
> collateral attack, including, but not limited

---

[4] Malivao's memorandum in support of the § 2255 Motion,
[dkt. nos. 152-3 to 152-9,] contains several sections with
separate pagination ranges.  His State of Jurisdiction,
Memorandum of Facts Presented, and Statement of Relevant Law are
pages J 1 to J 3; his Introduction, Summary of Argument, and
Statement of the Case are pages I 1 to I 10; and his Memorandum
of Factual Support is pages 1 to 29

> to, a motion brought under Title 28, United
> States Code, Section 2255, except that
> Defendant may make such a challenge (1) as
> indicated in subparagraph "b" below, or
> (2) based on a claim of ineffective
> assistance of counsel.
>
> b.   If the Court imposes a sentence
> greater than specified in the guideline range
> determined by the Court to be applicable to
> the Defendant, the Defendant retains the
> right to appeal the portion of his sentence
> greater than specified in that guideline
> range and the manner in which that portion
> was determined under Section 3742 and to
> challenge that portion of his sentence in a
> collateral attack.

[Plea Agreement at 9-10.]

The Ninth Circuit has already held that Malivao's waiver of his right to appeal his conviction and sentence was supported by adequate consideration and precluded the Ninth Circuit from addressing the argument regarding Rule 32 violations.  [Memorandum Disposition at 2.]  The Ninth Circuit's ruling "is the law of the case," and this Court must follow it in considering Malivao's § 2255 Motion.  See United States v. Jingles, 702 F.3d 494, 498 (9th Cir. 2012) (citing In re Rainbow Magazine, Inc., 77 F.3d 278, 281 (9th Cir. 1996) ("[T]he decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case"); Odom v. United States, 455 F.2d 159, 160 (9th Cir. 1972) ("The law in this circuit is clear that when a matter has been decided adversely on appeal from a conviction, it cannot be litigated again on a 2255

motion") (alteration in <u>Jingles</u>) (some citations omitted)).  This

Court therefore denies Malivao's § 2255 Motion as to Ground One.

## II.  <u>Grounds Two and Three - Ineffective Assistance of Counsel</u>

Malivao's ineffective assistance of counsel claims fall

within one of the exceptions to the waiver of his appellate and

collateral review rights, and the Ninth Circuit did not address

Malivao's ineffective assistance arguments in his direct appeal.

This district court has stated:

> To prevail on an ineffective assistance
> claim, a petitioner must show that (1) counsel's
> representation fell below an objective standard of
> reasonableness, and (2) there is a reasonable
> probability that, but for counsel's unprofessional
> errors, the result of the proceeding would have
> been different.  <u>Strickland v. Washington</u>, 466
> U.S. 668, 687-88 (1984).  That is, the petitioner
> must also show that the deficiency was
> prejudicial.  <u>Id.</u> at 692.
>
> Counsel "is strongly presumed to have
> rendered adequate assistance and made all
> significant decisions in the exercise of
> reasonable professional judgment."  <u>Id.</u> at 690.
> But, a court need not determine whether counsel's
> performance was deficient before examining the
> prejudice suffered by the petitioner as a result
> of the alleged deficiencies.  <u>See id.</u> at 697.  In
> other words, any deficiency that does not result
> in prejudice necessarily fails.

<u>United States v. Chaves</u>, Cr. No. 14-00579 JMS (03), 2016 WL

5660327, at *4 (D. Hawai`i Sept. 28, 2016).  As to the

reasonableness of representation prong, a court must "determine

whether, in light of all the circumstances, the identified acts

or omissions were outside the wide range of professionally

competent assistance." <u>Strickland</u>, 466 U.S. at 690. Malivao bears the burden of proof as to both prongs of the <u>Strickland</u> analysis, <u>see</u> <u>Turk v. White</u>, 116 F.3d 1264, 1265 (9th Cir. 1997), which applies to § 2255 motions alleging ineffective assistance related to sentencing. <u>See, e.g.</u>, <u>United States v. Carlsen</u>, 441 F. App'x 531, 535 (9th Cir. 2011) (applying <u>Strickland</u> analysis to a claim that defense counsel failed to advocate for the application of a relevant provision of the United States Sentencing Guidelines).

## A. **Representation Regarding the Aggravated Role Adjustment**

As previously noted, the PSR recommended the imposition of a two-level adjustment pursuant to U.S.S.G. § 3B1.1(c) because Malivao "was an organizer, leader, manager, or supervisor in any criminal activity that involved less than five participants."[5]

_____

[5] U.S.S.G. § 3B1.1 states:

Based on the defendant's role in the offense, increase the offense level as follows:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

(c) If the defendant was an organizer, leader, manager, or supervisor in any

(continued...)

11

[PSR at ¶ 31.]  Malivao argues Mr. Harakal rendered
constitutionally ineffective assistance because he "failed to
properly object to the aggravating role adjustment as required by
Federal Rule of Criminal Procedure 32."  [Mem. in Supp. of § 2255
Motion at 8.]  According to Malivao, instead of filing the
requisite sentencing statement objecting to the aggravated role
adjustment, Mr. Harakal raised the objection through other means,
effectively waiving any challenge to the adjustment.  [Id. at 10-
11.]  Further, during the sentencing hearing, Mr. Harakal stated
Malivao did not object to the PSR.  [Trans. of 8/26/15 Sentencing
("Sentencing Trans."), filed 11/25/15 (dkt. no. 146), at 3
(Malivao and Mr. Harakal both stated they "had a full and fair
opportunity to read, review, and discuss the presentence
investigation report and any addendum and file any factual or
legal objections to the report"); id. at 4 (confirming that "the
defense has no remaining objections to either the factual
findings or the application of the guidelines to the facts").]
Malivao also emphasizes that, when Mr. Harakal presented
arguments at the sentencing hearing why Malivao should not be
found to be a leader or organizer of the offense, he was merely
placing the argument on the record because this Court had already

---

[5] (...continued)
        criminal activity other than described in (a)
        or (b), increase by 2 levels.

made the factual findings supporting the aggravated role adjustment. [Mem. in Supp. of § 2255 Motion at 11.[6]]

Malivao is correct that Mr. Harakal did not file a sentencing statement raising objections to the PSR. <u>See</u> PSR at pg. 19 ("Randall N. Harakal was reminded to file a Sentencing Statement; however, to date, there has been no response.").] However, in the 6/29/15 Motion, Mr. Harakal argued:

> Malivao should not have had an added +2 adjustment for role in the Offense Pursuant to USSG §3B1.1(c). It is argued that the +2 adjustment is incorrect based upon the facts of the case especially since his role was amplified by the other three co-defendants who all received a greatly reduced sentence for being involved in the same conspiracy.

---

[6] The following exchanged occurred during the sentencing hearing:

> . . . These guys are there. You hang out with them. You get caught up in it. And that's one of our arguments is that I don't think he had – he should have a plus two adjustment for being the ringleader because they haven't tied in that he ordered the drugs –
>
> THE COURT: Okay. I'm sorry. I'll give you an opportunity to argue it, but I've already adopted the –
>
> MR. HARAKAL: I know, Your Honor.
>
> THE COURT: And so I've actually found him to be the leader and organizer, meriting the plus two.
>
> MR. HARAKAL: Okay. I just want to put it on the record.

[Sentencing Trans. at 15.]

[6/29/15 Motion at 8.]

Although Mr. Harakal may not have presented Malivao's challenge to the aggravated role adjustment in the traditional manner, this Court clearly examined the issue and made specific findings.  At the sentencing hearing, this Court found:

> You personally have been held responsible for distributing over 3,900 grams – or have been personally responsible for over 3,900 grams of ice, which is a large and significant amount.  You intended this amount to be distributed in our community.
>
> You are also found to be an organizer or leader of a conspiracy because you arranged for the shipment of drugs and were responsible for paying Lilo and Vili.  Indeed, among the conspiracy and the conspirators, you were the common cog.  Everybody knew you.  They didn't necessarily know one another.
>
> . . . Lilo reported being aware that you distributed ice for the prior five to four years prior to being apprehended – he was apprehended by law enforcement.  Vitorio Vili was your driver, and he said that he would drive you around to various clubs and bars about three times a week. James McKinnon worked for you as a drug runner.

[Sentencing Trans. at 6.]  The Government's arguments also show that the issues of Malivao's role in the offense and potentially disproportionate sentences between Malivao and his co-conspirators were before this Court in Malivao's sentencing. See id. at 10 ("[T]hat's why he got a role – a role adjustment. And that's why he's not similarly situated to the other three defendants.").

Because the issue of whether the imposition of an aggravated role adjustment was warranted in this case was presented to, and considered by, this Court, Mr. Harakal's representation did not fall below an objective standard of reasonableness. See Strickland, 466 U.S. at 688. Even if Mr. Harakal's decision not to file a sentencing statement raising objections to the proposed aggravated role adjustment was an unprofessional error, there is no evidence in the record that, but for the error, the adjustment would not have been imposed. See id. at 694. In other words, even if there was a deficiency in Mr. Harakal's representation as to this issue, the deficiency was not prejudicial. See id. at 692. Malivao's ineffective assistance of counsel claim fails as to Mr. Harakal's representation related to the alleged failure to challenge the aggravated role adjustment. The § 2255 Motion is therefore denied as to Ground Two.

**B.** **Representation Regarding the Safety Valve**

In Ground Three, Malivao argues Mr. Harakal rendered ineffective assistance because he failed to argue that Malivao qualified for a safety valve adjustment. This district court has stated:

> The safety valve provision permits a court to sentence a defendant to a term of imprisonment that is lower than a statutory minimum sentence in limited circumstances. 18 U.S.C. § 3553(f); see generally United States v. Shrestha, 86 F.3d 935 (9th Cir. 1996) (summarizing the function of the

safety valve provision).  A key requirement of the
safety valve provision is that an eligible
defendant must have no more than one criminal
history point.  18 U.S.C. § 3553(f)(1).

Bonilla-Galeas v. United States, Criminal No. 13-00765 HG-2, 2017

WL 357309, at *7 (D. Hawai`i Jan. 24, 2017).  The safety valve

provision states:

> Notwithstanding any other provision of law, in the
> case of an offense under section 401, 404, or 406
> of the Controlled Substances Act (21 U.S.C. 841,
> 844, 846) or section 1010 or 1013 of the
> Controlled Substances Import and Export Act (21
> U.S.C. 960, 963), the court shall impose a
> sentence pursuant to guidelines promulgated by the
> United States Sentencing Commission under section
> 994 of title 28 without regard to any statutory
> minimum sentence, if the court finds at
> sentencing, after the Government has been afforded
> the opportunity to make a recommendation, that—
>
>> (1)  the defendant does not have more than 1
>> criminal history point, as determined under
>> the sentencing guidelines;
>>
>> (2)  the defendant did not use violence or
>> credible threats of violence or possess a
>> firearm or other dangerous weapon (or induce
>> another participant to do so) in connection
>> with the offense;
>>
>> (3)  the offense did not result in death or
>> serious bodily injury to any person;
>>
>> (4)  the defendant was not an organizer,
>> leader, manager, or supervisor of others in
>> the offense, as determined under the
>> sentencing guidelines and was not engaged in
>> a continuing criminal enterprise, as defined
>> in section 408 of the Controlled Substances
>> Act; and
>>
>> (5)  not later than the time of the
>> sentencing hearing, the defendant has
>> truthfully provided to the Government all

information and evidence the defendant has
concerning the offense or offenses that were
part of the same course of conduct or of a
common scheme or plan, but the fact that the
defendant has no relevant or useful other
information to provide or that the Government
is already aware of the information shall not
preclude a determination by the court that
the defendant has complied with this
requirement.

18 U.S.C. § 3553(f); <u>see also</u> U.S.S.G. §§ 2D1.1(b)(17), 5C1.2.[7]

---

[7] U.S.S.G. § 2D1.1(b)(17) states:

If the defendant receives the 4-level ("minimal
participant") reduction in § 3B1.2(a) and the
offense involved all of the following factors:

(A)  the defendant was motivated by an
intimate or familial relationship or by
threats or fear to commit the offense and was
otherwise unlikely to commit such an offense;

(B)  the defendant received no monetary
compensation from the illegal purchase, sale,
transport, or storage of controlled
substances; and

(C)  the defendant had minimal knowledge of
the scope and structure of the enterprise,

decrease by 2 levels.

Similarly, § 5C1.2 states, in pertinent part:

(a)  Except as provided in subsection (b), in the
case of an offense under 21 U.S.C. § 841, § 844,
§ 846, § 960, or § 963, the court shall impose a
sentence in accordance with the applicable
guidelines without regard to any statutory minimum
sentence, if the court finds that the defendant
meets the criteria in 18 U.S.C. § 3553(f)(1)-
(5) . . . .

(b)  In the case of a defendant (1) who meets the
(continued...)

Malivao's criminal history score was zero, [PSR at ¶ 44,] satisfying the first safety valve requirement. The 6/29/15 Motion emphasized the fact that Malivao was a first-time, non-violent offender. [6/29/15 Motion at 19, 24.] Further, there is no evidence in the record that, in connection with the offense, Malivao: used a threat of violence; possessed a firearm or other dangerous weapon; or induced someone else to do so. Thus, the second and third safety valve requirements would have been met. As previously noted, Mr. Harakal asserted in the 6/29/15 Motion that Malivao was not an organizer or leader in the offense. In other words, Mr. Harakal effectively argued the fourth safety valve requirement was met. As to the fifth safety valve factor, the 6/29/15 Motion did not state that Malivao provided the Government with any information and evidence, but did emphasize that Malivao had accepted responsibility. See, e.g., id. at 18. Although the 6/29/15 Motion did not use the term "safety valve," it advocated for the same effect provided for in the safety valve provisions – a sentence below the statutory mandatory minimum sentence. See id. at 27 (requesting the imposition of "a sentence at or below the mandatory 10 year

---

[7] (...continued)
criteria set forth in subsection (a); and (2) for whom the statutorily required minimum sentence is at least five years, the offense level applicable from Chapters Two (Offense Conduct) and Three (Adjustments) shall be not less than level 17.

minimum sentence for a first time offender that is along the lines or similar to the lenient sentences that were granted to the various co-defendants involved in this case"). Because the issues were presented in connection with the sentencing proceedings, this Court concludes that Mr. Harakal's representation did not fall below an objective standard of reasonableness.

However, even if Mr. Harakal committed an unprofessional error by failing to make the specific argument that the safety valve provisions applied, there is no evidence in the record to support applying the safety valve provisions. This Court ultimately found that Malivao was an organizer and leader in the offense, which disqualified him from the safety valve provisions. <u>See</u> § 3553(f)(4). In other words, even if Mr. Harakal's representation was deficient as to the safety valve issue, this deficiency did not prejudice or harm Malivao as he could never qualify for the safety valve provisions. As a result, Malivao's ineffective assistance of counsel claim fails and the § 2255 Motion is denied as to Ground Three.

Because each of the grounds raised fails as a matter of law, Malivao's § 2255 Motion is denied.

III. **Certificate of Appealability**

This district court has stated that:

In dismissing a § 2255 motion, the court must also address whether [defendant/petitioner] should

19

be granted a certificate of appealability ("COA").
See R. 11(a), Rules Governing Section 2255
Proceedings (providing that "[t]he district court
must issue or deny a certificate of appealability
when it enters a final order adverse to the
applicant").  A COA may issue only if the
petitioner "has made a substantial showing of the
denial of a constitutional right."  28 U.S.C.
§ 2253(c)(2).

"The standard for a certificate of
appealability is lenient."  <u>Hayward v. Marshall</u>,
603 F.3d 546, 553 (9th Cir. 2010) (en banc),
*overruled on other grounds by* <u>Swarthout v. Cooke</u>,
562 U.S. 216 (2011).  The petitioner is required
to demonstrate only "that reasonable jurists could
debate the district court's resolution or that the
issues are adequate to deserve encouragement to
proceed further."  <u>Id.</u> (citation and internal
quotation marks omitted).  The standard "requires
something more than the absence of frivolity, but
something less than a merits determination."  <u>Id.</u>
(internal quotation marks omitted).

The court carefully reviewed [the
defendant/petitioner's] assertions and gave him
every benefit by liberally construing them.  Based
on the above analysis the court finds that
reasonable jurists could not find the court's
rulings debatable.

<u>Leon v. United States</u>, Civ. No. 15-00099 JMS-BMK, 2015 WL

3965895, at *9-10 (D. Hawai`i June 29, 2015) (some alterations in

<u>Leon</u>).  Reasonable jurists would not find that the rulings in

this Order regarding Malivao's § 2255 Motion are debatable.  A

certificate of appealability therefore will not be issued.

## CONCLUSION

On the basis of the foregoing, Peter Malivao's Motion

under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence

by a Person in Federal Custody, filed July 21, 2017, is HEREBY

20

DENIED.  In addition, this Court DENIES a certificate of appealability.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, December 28, 2018.



 /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

PETER MALIVAO VS. UNITED STATES OF AMERICA; CR 13-00885 LEK; CV 17-00358 LEK; ORDER DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY AND DENYING A CERTIFICATE OF APPEALABILITY